Good afternoon. Illinois Appellate Court First District Court is now in session. The First Division, the Honorable Justice Michael Hyman presiding. Case number 1-9-2-1-0-9, People v. Archie Lee. Good afternoon. I apologize, first of all, we're a few minutes late. But we're all here, so please excuse us for being a little late. I introduce to you Justice Pierce and Justice Mary Ellen Coghlan. If each of you could please introduce yourselves. Good afternoon, Your Honors. I am Herridge Petta, Jr. with Riley Staple Homes and Concealer on behalf of Mr. Archie Lee. Thank you. Assistant State's Attorney Andrew Yasan on behalf of the people. So each side gets 20 minutes. Mr. Chapta, you get to reserve some time for rebuttal. And we'll conduct, how long do you want for rebuttal? Five minutes. Okay. We'll conduct ourselves as if we were in the courtroom. We will interrupt. Please finish your thought and then please move on to the question that's before you. Okay. Any questions? If not, we'll proceed. Thank you. May it please the court. I'm Herridge Petta, Jr. with Riley Staple Homes and Concealer on behalf of Mr. Archie Lee, the appellant. Mr. Lee is currently saving an eight-year sentence for a burglary conviction. I'm here to present to this panel a basis as to why Mr. Lee's conviction should be reversed and his indictment be dismissed because he was deprived of his due process guaranteed to him under the Illinois and United States constitutions to present to the jury all true facts in this case that would have exonerated him. And that is true for the following reasons. Mr. Lee was barred from presenting to the jury the fact that on the night of his arrest, there was a dash cam recording made from the responding police officer's squad car. How do you know that? How do you know there was a dash cam made? You said it was a positive statement. What evidence do we have that there was a video made? Um, well, the Chicago Police Department responded to a subpoena request indicating that there was a video recording in Officer Brown's dash cam, but he had been purged in accordance to their retention policy. In addition, maybe there wasn't a purge, but we also know his testimony was the dash cam wasn't on because he turned his lights off and he had pulled into the parking lot space backwards so his lights would have faced the opposite direction from the entrance to the store. Yes, Officer Brown's testimony at the motion to dismiss hearing indicated that he had activated his lights when he responded to the call. He only testified that he had turned off his lights a few blocks away at trial. But when he was asked at the motion to dismiss hearing if he activated his lights, he said he did. There's a call log that from his squad car that indicates that the lights were activated, which means there was a dash cam video recording. And what you just said, it shows that he turned them off when he got close because they didn't want to have their lights on as they got close there and then first they waited until they had backup. Yes, but the fact that he had the lights on means he activated the video. So on the night of that, of the night of the arrest, there should have been some sort of video that was made from his recording. But there's no need, the fact that they had their, once they turn off the lights, what happened before then is totally irrelevant. So the fact that he had his lights on on the way, part of the way there, that's not relevant. Well, that's the testimony that officer Brown presented that he had turned off his lights was not was equivocal. He does not recall exactly where he stopped when he turned off the lights or, and it was a change from what his position had always been that he had activated his lights when he, when he went to the stop shop. Counsel, he never wavered in his position that the whole reason why he didn't want the lights on was he did not want to alert the people that were inside the store. You're not disputing that, are you? I'm only disputing that to the extent that that testimony came up at trial, but he never testified at the motion to dismiss hearing that he turned off his lights because he didn't want to alert people at the... Well, was he specifically asked that question? He was not. I do not believe he was specifically asked that question. Well, in addition, the, in the motion to eliminate stage, that's preliminary. And so everything came up again at the trial. Correct. When he came up at trial, that testimony, that testimony did not, that testimony that he stopped his, that he stopped his lights was contradictory to the state's claim that there wasn't any video, any video that existed from that, from the night of that event. Now, when he testified at trial saying there was, he did activate his lights, that did, that established that, that night there was some sort of video that should have been preserved. Now, without... Again, I will ask you, why is it relevant whether he had his lights on before he got there? What video would be relevant with regard to what happened until he got to the scene? The video would be relevant because we do not know where he turned off his lights. He never testified that I stopped here in relationship to, to the stop shot. He simply testified that, yes, I, equivocally, yes, I turned on the lights as I was going there. It's very well possible that on his way there, the lights were on and they could have shown my, my client standing on the street on Exchange Avenue, where he has always maintained he was arrested. So, without any sort of evidence to support this idea that he turned off the lights before he got to the, to the stop shot, without any call logs or anything like that to indicate that he did stop before he got there, and his testimony does not, is not, is equivocal as to where he stopped, that video would have been relevant because we would have been able to see where he, what, where he stopped. Now, the video has been purged, which... You say that again. What evidence is, whether it's purged or it didn't work? I mean, they didn't have a design. It doesn't matter. It seems to me, can you give me any evidence, evidence that the video ever existed? Yes. As I pointed out, the Chicago Police Department responded to a subpoena requesting a video from dash cam, from the dash cam of Officer Brown's squad car. And they outlined that there was video that was made, but he had been purged pursuant to the retention policy. So, we know that there was a video that was purged. And under Illinois law, that video should have been kept so that we would not have this particular situation where we're like, where did he stop? Well, I don't understand why you, what are you relying on in saying that the video should have been kept? What portion of the statute? Ah, yes. That is section... That is section 514E that provides that videos made as part of an arrest, or that can be... But it wasn't made as part of an arrest. I would contend that because we have not seen the video, we do not know that it was not made as part of an arrest because we cannot see where Officer Brown stops. So, I'll contend that it was part of an arrest or part of the statute also continues to say that as evidence that can be used in any criminal proceeding. So, if... But other than that's what you believe, you don't have any evidence to support that. Officer Brown's testimony saying he activated his lights when he was going there without any support as to, without explaining where he exactly stopped and knowing that there was actually a video that was purged. And there's this requirement under Illinois law that this video should be kept so that we are... We're kind of going round and round, but clearly you just don't think his testimony is credible that he stopped the video before getting to the store because he didn't want to alert the people inside that he was there. You just reject that as being not credible. Yes. And because... To show what it is that he... Where it is that he stopped. So, and because of... Do we need video evidence in order to do that? I mean, can't... When we accept a prior fact and in this case, the judge at the hearing would make that decision based on what he hears? Ah, yes. Well, the jury in this case was barred from hearing testimony about any video being purged. So, the credibility issue is, comes in at this point because if the jury gets to hear the facts that I just laid out to you right now, Officer Brown will... The state cannot then show that on the night of the arrest, there was some sort of video. And this video could have been... Could have exonerated the client. That's because the trial court on the day of trial made this motion... Made this ruling on a motion in limine that they could not elicit testimony to present to the jury that the Chicago police had... There was a videotape that was made on the night of the arrest and was subsequently destroyed. The jury was not... Archie was not able to present to the jury that Illinois requires that this video is preserved. All he was allowed to do was to ask if there was video or if there wasn't any video. So, the testimony at trial was that the arresting officer turned off his lights and siren, which deactivated the camera before he got to the restaurant, right? Correct. And defense counsel elicited no testimony from the officer as to when specifically he turned it off, correct? Right. Defense counsel did elicit testimony. And he said he turned it off before he got to the location, correct? Correct. Was there any evidence to the contrary that that was contradicted in any way? Yes. What was that? The officer Brown's prior testimony, which was closer to when the events took place. And what did he say in his prior testimony? That he activated his lights, went to respond to the sub shop, and he parked his vehicle facing away from the sub shop. Okay. Did anybody at that prior hearing ask him if he ever turned the device off or if it was ever turned off? No. Okay. So, we don't know and we don't have anything contradictory to his trial testimony that when he approached the scene of the crime, the lights were off and the camera was off, correct? I would... Is that correct? No. It's not correct? I would disagree with that position in the reason being the ruling of the motion to dismiss hearing the judge credited his testimony that the video was irrelevant because he faced away from the sub shop. So, taking that together, it shows that the lights were on. The video was deemed irrelevant because the judge accepted officer Brown's testimony that when he pulled in there, he was facing away from Exchange Avenue. So, while he might have not been asked, did you turn them off? The entire proceeding was around this idea as to what would have been on the video. Now, officer Brown said, yeah, when I got there, I turned around and I was facing away from Exchange Avenue. And their ruling was, okay, because officer Brown was facing Exchange Avenue, the video wouldn't have shown what took place inside the store. And as such, the tripod denied Archie's motion to dismiss. Let's... Are you disagreeing with the video log? The video log of that camera with Purge was from 2, 25, 55 AM and ended at 2, 28, 49 AM. And the officer received the 9-11 call at 2, 31. So, about two minutes later and arrived at the scene at 2, 39 and made the arrest at 2, 49. So, apparently the camera was turned off even before the officer arrived. Unless you're disagreeing with the video log. I'm actually not disagreeing with the video log. I agree with the video log that it was turned on at 2, 25 and turned off at 2, 28. The 2, 31 time is what is... There is no evidence that supports that assertion that officer Brown received this at 2, 31. The only time that the 2, 31 time comes up was at a pre-trial hearing where the state asked officer Brown, at approximately what time did you get this call? Sorry, let me rephrase it. They asked him, did you receive this call at approximately 2, 31? Their motion to eliminate sites 2, 31 as something that can be supported by evidence. There is none. There's no 9-1-1 OEMC report showing that there was a 9-1-1 call at 2, 31. No, the officers received a 9-1-1 call regarding this case at 2, 31. That was what it showed. You're saying that's not the evidence? Right. I'm saying there isn't any evidence saying that that call actually came in at 2, 31. That was just testimony from officer Brown saying the call came in at 2, 31. Well, the last time I checked, even with officer Brown, that's evidence. Oh, of course. Sure, that is evidence that then now goes to his credibility and the credibility of the state's case because the state points out that there was a 9-1-1 call. The individual that made the call, he says he dialed 9-1-1, but like I said, there's not a report of that. However, officer Brown testified that he responded to the scene based off of a call that he received from the fire department truck. Apparently, the witness that called 9-1-1 flagged down a fire truck, which is what officer Brown testified to as the reason he went to the scene of the crime. So, that witness was asked multiple times if he ever flagged down a fire truck. He said, I didn't. Officer Brown has always responded, has always stated that he responded to that call because he responded off of a call that came from the fire department. That's what officer Brown has said. So, that 2, 31 time is not supported by anything besides testimony that was elicited by the state. Officer Brown wasn't even unequivocal on that. He was like, yeah, I think so, around 2, 31. So, that 2, 25 log, that is what is correct here. That shows that there was a video that was activated at 2, 25. Now, we don't know what time he arrived at the sub shop. We do know from his arrest report that his arrest time was at around 2, 49. Those are the only three things that can be supported outside of what just the state asserts. Now, without the video and without the opportunity to present to the jury that there was a video that was destroyed that would have, based on officer Brown's testimony, would have likely shown Mr. Archie on Exchange Avenue. Mr. Lee was deprived of his due process. He could not present to the trial facts, all the facts in this case. Everything that took place was the police saying, okay, we did it like this. We did it like that. That deprivation was a constitutional violation. Now, under Illinois law, once there's a constitutional violation, it is now the burden of the state to show that they would have still been able to convict Archie, even with all these violations. I do not believe they could not do that in this particular instance. Archie's co-defendant, Kevin Creed, unequivocally has always stated he was alone. When he was inside the sub shop, Archie Lee was never there. He pleaded guilty to this burglary. He is currently serving his time for this crime. Do you have another argument you want to make or is this the argument you want to rest in your griefs and continue with this argument or is another argument you wish to address? The only other argument that I would like to make is the impact of what this ruling would have on Illinois law. One officer's testimony should not excuse an obligation by the police and the state to keep dash cam video. We have authority, CLADIS, which says you have to keep these videos because videos are objective evidence. It helps both sides. In this particular instance, where Officer Brown is saying Archie was inside the sub shop and Archie is saying I was on the street, and Officer Brown testifies that there was video facing the street. With that video, we would have been able to figure this case out at the very beginning and not be here wondering what could have been on the video. But going back to what Jacqueline said, the fact that he's standing out on the street is not part of the arrest. If he was standing out on the street when the police squad car is going past with the lights out, that's not part of the arrest. The arrest happened afterwards, right? At least 10 minutes later. I mean, your argument doesn't make any sense. I'm trying to figure it out. You're saying they're supposed to have their lights on, but the statute that you read said part of the arrest. That's not part of an arrest. I'll present to the court that it was part of an arrest because Officer Brown testified that his lights were facing Exchange Avenue, which is where Archie Lee was arrested, or where he was. So any video that was made around this time would have been part of that arrest, or at least used as evidence in this criminal prosecution, which is also another part of the case. Your position is that this Rockford resident came down here with his friend and happened to be standing on a street with a car that can be identified as a police car, right in front, uh, you know, facing the street, and there's two police officers in there, and what, he waits around until the other police cars come, and they go inside, and then they come out, and they arrest him. Is that it? He's standing there all this time in full view, and he doesn't do anything? We're supposed to believe him. That's the story. Is that right? No, the story is that he was with them. He saw flashing lights behind him while he was down on Exchange Avenue. He was at that point when he saw those flashing lights, was wondering what was going on. He started walking up towards the sub shop, and that's when he was arrested. It wasn't that he was just standing over there for no real reason. Why would he go to the sub shop when he knows that he's from Rockford, right? They came down here according to testimony. They came down here to knock off someplace to get some money, okay? So, uh, and now he sees that, uh, it's been, uh, discovered, and the police are there. You're saying he walked right back to the scene. Does that make any sense? Yes, uh, I would present that that's where the issue is here, because if there was a video, we would have been able to see that he was on the street. If, even he was planning maybe to go in there to, I don't know, help out his friend or something like that, that is not what he's been charged with here. He's been charged with burglary, and the police claim he was arrested inside the sub shop. That's what the charge has been. They cannot, they cannot credibly argue that he was arrested inside the sub shop when they deleted video that was made that night that would have shown that he was not inside the sub shop. Maybe, maybe not. We don't know, but okay, you want to finish up and then we have five minutes. Right, uh, yes. In conclusion, I like, I want to present to this court that there have been a lot of inconsistencies all around this case. Some of the officers said they found keys on officer, on Archie. It turned out the keys were on Kevin Cree. They, uh, their report indicated that the keys were on Kevin Cree and that a trial testified that the keys were on Archie. Their reason for this discrepancy was that they failed to copy and paste. This is the type of, these are the type of assertions that they were presenting, copy and paste, when somebody's life is at, when somebody's is being deprived. So with that, uh, I would ask this court to reverse the decision on the trial court and dismiss Mr. Lee's conviction. Thanks. Yeah. Uh, good afternoon, assistant state's attorney, Andrew Yasson on behalf of the people. Good afternoon, your honors and counsel. I'd like to begin by pointing out the overwhelming evidence that was presented against defendant at trial, which completely negates his art, this argument that any squad video would have been relevant to this case at all. Excuse me. Primarily and most importantly, the eyewitness Roland Daniel, who did not know either defendant and did not have anything to do with this burglary testified at trial that he saw two individuals breaking into the back of the sub shop. He's got two individuals being brought out of the sub shop. It was the testimony of officer Brown, who said that he caught the defendant inside the restaurant, hiding between the broken ATM machine and the table. And the officers recovered two matching pairs of gloves learned by both this defendant and the co-defendant, Kevin Cree and two crowbars, both of which were sticking out of the ATM machine when the officers made entry into the restaurant. And lastly, defendant made a full admission to detective Beasley just a few hours after being arrested. He told detective Beasley that he was from Rockford, which is where he knew Kevin Creed. He said that he and Kevin had driven to Chicago together and that they discussed problems that they were having. Uh, he said that he and Kevin saw the rainbow beach sub shop and decided to pry open the back of the restaurant. Once inside, they looked for money. There was no money in the cash register. So then they went to the ATM and tried to open the top part of it. That's when they realized that the money was actually in the bottom part of the ATM. So then he began to pry, pry that part. Then he saw a flashlight. So he ducked down next to the ATM machine and put his hands up when the police saw him. And detective Beasley specifically asked him about the surveillance system that was in the restaurant. And the defendant said that he and Kevin quote, knocked a camera down because they know how to not get caught, end quote. But the squad camera that defendant bases his entire argument on, even if it did exist and was purged or destroyed by the Chicago police department, would not have at all been relevant to this case and would not have at all helped the defendant at trial. In spite of this overwhelming evidence against him, defense still argues that this video that should have been recorded by officer Brown's vehicle is somehow the argument was that officer Brown is wrong. I'm sorry. Part of the argument was credible, but what's your response? Officer Brown's testimony was substantiated by Roland Daniel and by the defendant's own admission to detective Beasley. So this statement that his testimony that he, when he turned the camera off was not credible, everything else that he testified to with regards to the way that the situation unfolded was corroborated by other witnesses, including the defendant himself. Defendant argues that the trial court abused its discretion in denying his cladis motion because the people violated his right to due process and their discovery obligations by not producing this squad video that the defendant says should have existed. But before getting into the discussion of due process or discovery violations, the first question is whether this evidence is even evidence at all, meaning did it, or does it exist in the first place? And here the defendant can't show that there was any video from officer Brown's squad car that would have captured anything related to his arrest at the rainbow beach sub shop. According to the video log, officer Brown's in-car camera began to record at 225 and 55 seconds and ended at 228 and 49 seconds. And officer Brown testified that he received the call at 231 and that he and his partner arrived at the shop at 239 and defendant wasn't placed under arrest until 240. That's the only video that was ever found relating to this incident ended 10 minutes before the officers even arrived at the shop in 20 minutes before the defendant was placed under arrest. Additionally, officer Brown testified that he turned the lights off to his squad car when he was a few blocks away from the sub shop, which would have ended any recording anyway. The next area of inquiry is whether the video, if it did exist, would have captured anything at all related to this offense. Presuming officer Brown's squad car video was running, records completely devoid of any testimony as to where it was facing in relationship to anything that happened at the shop or even what side of the shop it was parked on, defendant, all the defendant does is say that he was arrested outside and that his car was in the street. I mean, it was a street where the lights were pointed. The car would have been pointed to the street where he said the defendant. Correct. He does say that the car was facing exchange, but it doesn't say that where he was in relationship to the car. The only thing that came out anywhere at all and defendant mentions this in his reply brief is that his testimony was that he was arrested at 75th and exchange. Well, 75th and exchange that intersection. This is a sub shop at 7520 south exchange. So that intersection is a good distance away from where this car was. Furthermore, defendant absolutely could have testified at any one of the hearings or even at trial if he chose to that the car would have or should have captured what happened outside because he was either in front of it or he passed in front of it or something relating to where he was in relationship to the camera that should have captured this. He never did that. Nothing's in the record about where this camera was. He never filled in those gaps. Moving on to the due process analysis. The first area of inquiry is whether the evidence, if it existed, was material or whether it was potentially useful. Where the evidence is lost or destroyed, this court can't make a determination of whether the evidence was materially favorable to the defendant. So the only analysis this court can consider is whether the evidence was potentially useful. If evidence is potentially useful, it's not a denial of due process unless defendant can show bad faith on the part of the police or the prosecution. Defendant did not argue bad faith in this case. He didn't argue that the people or the police in this case acted in bad faith and therefore any argument to that end is waived. And because defendant didn't argue bad faith in front of the circuit court, he implicitly acknowledged that there was no basis for that claim. And even if he did raise bad faith argument, there's nothing in the record to support it because the video that was purged in this case was purged after the normal 90-day retention period. And defendant's arrest, which happened inside the restaurant, according to Roland Daniel, Officer Brown, and defendant's own admission to Detective Beasley, there was never any testimony. I recall there's a footnote in the defendant's brief that says that in the other, although it's related in this case, in that it says that there was a request for the video in his co-defendant's case within the 90-day. So that could have applied here too. I mean, if it was supposed to be kept, it should have been kept. Well, that's true, but there's no allegation that they didn't keep it in bad faith. There's no allegation that it was purged due to bad faith. Additionally, there was never any testimony that the defendant was anywhere even near Officer Brown's squad car such that any part of the arrest would have been captured on the video, even if it had been running. And there was no discovery request for the video until March 3rd of 2017, 90 days after June 10th, 2016, would have been September 8th. Thus, any recordings would have been purged almost six months prior to the first request that... But I thought the co-defendant asked within the... Yes, the co-defendant did. Oh, if it was there, it wouldn't have purged. It's a supposable. Well, that request was made to the people. That request was not made to the police department. And this is only an argument I'm making in relationship to the bad faith of the police department. Moving on to the discovery rules, people also didn't violate any discovery rules. To establish a discovery violation, defendant must show that the people failed to comply with an applicable discovery rule or an issue pursuant issued... I'm sorry, an order issued pursuant thereto. Defendant can't make such a showing because there's no evidence anywhere in the record that Officer Brown's camera was on and recording at the time he arrived at the sub shop. There's likewise no evidence that even if his camera were on and recording that it would have captured anything relevant to this case. Cladis is inapplicable to this case because in Cladis, the defendant filed and hand-delivered a request for any and all videotapes of defendant just five days after he was arrested and 25 days before the video was purged. Because the state was on notice that the defense requested that video to be preserved, it should have taken steps to ensure that it was preserved. Unlike in Cladis, the video recording at issue in this case, if it existed and was purged, wouldn't have been purged until almost six months before defense ever requested it or two months before defense requested it of the people. Additionally, Cladis doesn't stand as authority for imposing a sanction against the prosecution where the requested discovery material never existed in the first instance. Again, there's no evidence anywhere in the record that Officer Brown's vehicle actually recorded anything from the time he arrived at the restaurant or any time thereafter. Based on that, the state's asking that this court find the defendant's due process rights were not violated and the prosecution did not violate any applicable discovery rules. Defendant X argues... Oh, you're going to go ahead. Go ahead. You have a few more minutes. Okay. Defendant X argues that the trial court abused its discretion in granting the people's motion, referring to the video log, as we already discussed, the in-car camera that was purged began at 2.25 and 55 seconds and ended at 2.28. The officers received the 911 call at 2.31, arrived on scene at 2.39, and made arrests at 2.49. Thus, the prosecutor in this case, in the motion of the money, argued that there was never any video at all for this incident, and therefore,  it would have been prejudicial for the jury to hear that video was purged. The defendant argues that people's, quote, version of facts outlining the video was lacking specificity, evidentiary proof, and accuracy. And he also argues that the trial court shouldn't have accepted the people's assertions in the motion in limine, that regarding the time that the 911 call was received, but where there's no live testimony, the trial court must rely on the representations or offers of proof to determine what context for the evidentiary ruling will likely be a trial. So, it was proper for the trial court to represent, to rely on the representations of counsel during the hearing on this pre-trial motion. Additionally, defendant and his counsel were present in court when the motion was presented and raised no objection to the accuracy of the information the people presented. Even now, defendant's not arguing that the information was inaccurate, just that the trial court shouldn't have accepted it without support at the time it was presented. Plus, Officer Brown testified at trial regarding the time he received the call, which was 2.31, and the time that he arrived at the shop, which was 2.39. So, ultimately, the information the people provided at the motion in limine was substantiated by the trial testimony. Lastly, defendant argues that based on the testimony of Officer Brown, there should be some video that existed for the time frame commencing at 2.31 and sometime right before 2.39 when he arrived, and that the video that should exist very well could have shown the approach to the sub shop and defendant outside. That's all just speculation and conjecture. It is completely unsupported by any of the facts that are in the motion. There was no evidence presented anywhere at any time that any video ever existed between 2.31 and 2.39. Plus, even if there were, Officer Brown specifically stated that he was a few blocks away when he turned it up, so it wouldn't have captured anything near the sub shop anyway. The people properly represented to the trial court during their motion in limine that there was no evidence that any video from Officer Brown's squad car ever existed, and therefore, the trial court did not abuse its discretion in granting that part of the state's motion. The trial court also did not abuse its discretion in denying the defendant's motion for a new trial because the testimony elicited at the trial supported the people's representations at the motion in limine. For those reasons, we're asking that this court affirm defendant's conviction and sentence appropriately. Thank you. They have presented an argument saying there was no bad faith, that we have not argued that there was bad faith on behalf of the Chicago Police Department. Bad faith only comes in if the evidence that was destroyed was only potentially useful. We've already asserted that this evidence was materialized, so there's no reason to argue bad faith. As you noted, Justice Hyman, there was a request for this video to be kept in defendant's trial, which means the video should have still existed when the defense counsel, Archie, requested it. In addition, under Newberry, once the state is on notice that there's material evidence, it has an obligation to preserve that material evidence. Not the Chicago Police, this state has that obligation. Once they had received that notice, they should have made sure that video was kept. They didn't. We know they were on notice because the defense counsel made an oral motion to preserve evidence at a motion to quash hearing. The state started to provide some of the evidence to the defense, which means they were on notice prior to that 90-day retention that this video needed to be preserved. They didn't do anything to keep it. The state also states that even if this video existed, it would not be relevant because it was not facing this way or it was not facing that way. If that's the standard that we're going to be using, then the police would just come in and say, you know what? I was parked facing this way or I was facing that way. Therefore, it wouldn't be relevant. Claddus means nothing. This section that requires the police to keep this video means nothing. All they have to then do is say, I was facing one other way, so that's it. Now, it's not on the defendant to prove what was on the video. It's the obligation of the state to preserve that video so that they cannot just say this happened or that happened. There's a law for a reason to preserve these videos. They were on notice that this video was evidence in this case, not only for co-defendants from Arches Council. They started producing evidence prior to that 90-day retention policy, but somehow this one tape was purged. The only evidence that they can support here is the 249 arrests that's in the report, 225 to 228 call. 231 to 236, there is nothing in the record that supports that besides Officer Brown's assertions. Officer Brown has asserted at every point different things. For him, that makes sense in that case. When he gets to trial, that's when he decides to say, oh, I stopped a few blocks before. All of that would have not been necessary had this tape been there. It's their obligation. If the jury had heard this testimony with everything that is going on here, the state could not prove beyond a reasonable doubt that Archie Lee was inside the courtroom. I want to thank both of you for your briefs and for your arguments. We'll take the state-centered advisement, and we are adjourned. Thank you very much.